UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| LATOYA COOKS | * | CIVIL ACTION NO.  12-2352 |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| CAROLYN W. COLVIN, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | * | MAG. JUDGE KAREN L. HAYES |

<u>REPORT & RECOMMENDATION</u>

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

<u>Background & Procedural History</u>

Latoya Cooks protectively filed the instant applications for Title II Disability Insurance Benefits and Title XVI Supplement Security Income payments on July 23, 2009.  (Tr. 121-122, 128-130, 138).  She alleged disability as of July 18, 2009, because of diabetes and heart disease. (Tr. 150).  The claims were denied at the initial stage of the administrative process.  (Tr. 59-65). Thereafter, Cooks requested and received a September 8, 2010, hearing before an Administrative Law Judge ("ALJ").  (Tr. 22-58).  In an April 15, 2011, written decision, however, the ALJ determined that Cooks was not disabled under the Act, finding at step five of the sequential evaluation process that she was able to make an adjustment to work that exists in substantial numbers in the national economy.  (Tr. 9-18).  Cooks appealed the adverse decision to the

Appeals Council.  On August 1, 2012, however, the Appeals Council denied Cooks' request for review; thus the ALJ's decision became the final decision of the Commissioner.  (Tr. 1-3).

On September 12, 2012, Cooks sought review before this court.  She alleges the following errors,

> (1) the ALJ's residual functional capacity assessment is not supported by substantial evidence;
>
> (2) the ALJ' credibility finding was legally inadequate and not supported by substantial evidence; and
>
> (3) the Commissioner did not meet her burden at step five of the sequential evaluation process.

### Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards.  *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards.  *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. at 401.  Substantial evidence lies somewhere between a scintilla and a preponderance.  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).  A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).  The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the

Commissioner.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

## **Determination of Disability**

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability.  *See* 42 U.S.C. § 423(a)(1)(D).  The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).  Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.  *See* 42 U.S.C. § 423(d)(2)(A).  Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can

           still perform past relevant work, then a finding of "not disabled" will be made.

    (5)    If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## The ALJ's Findings

**I.    Steps One, Two, and Three**

        The ALJ determined at step one of the sequential evaluation process that Cooks had not engaged in substantial gainful activity during the relevant period. (Tr. 14). At step two, he found that she suffers severe impairments of coronary artery disease ("CAD"), hypertension, diabetes mellitus, residuals of a stroke, and degenerative joint disease of the right knee. *Id*. He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 15).

**II.    Residual Functional Capacity**

        The ALJ next determined that Cooks retained the residual functional capacity ("RFC") to

lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 4 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday. (Tr. 15). She can occasionally climb ramps, stairs, ladders, ropes and scaffolds, and occasionally crouch, stoop and kneel. *Id*. She can frequently balance. *Id*.

**III.    Steps Four and Five**

The ALJ concluded at step four of the sequential evaluation process that Cooks was unable to perform her past relevant work. (Tr. 17). Accordingly, he proceeded to step five. At this step, the ALJ determined that, as of the alleged disability onset date, Cooks was a younger individual, with a limited education and the ability to communicate in English. *Id*. Transferability of skills was not material. *Id*. He then observed that given Cooks' vocational factors, and if she were capable of performing the full range of light work, the Medical-Vocational Guidelines would direct a finding of not disabled. 20 C.F.R. § 404.1569; Rule 202.18, Table 2, Appendix 2, Subpart P, Regulations No. 4. *Id*. However, because Cooks' residual functional capacity did not permit her to perform the full range of light work, the ALJ consulted a vocational expert ("VE") to determine whether, and to what extent her additional limitations eroded the occupational base for unskilled light work. (Tr. 17-18). In response, the VE identified the representative jobs of first aid attendant, *Dictionary of Occupational Titles* ("DOT") Code # 354.677-010, and laundry bagger, DOT Code # 920.687-018, that were consistent with the ALJ's RFC and Cooks' vocational profile. *Id*.[1]

---

[1] The VE testified that for the first aid attendant job, there were 6,580 positions nationally and 96 jobs regionally. (Tr. 18, 55-56). For the laundry bagger job there were 309,743 jobs nationally and 2,000 jobs regionally. (Tr. 18, 55-56). This incidence of jobs constitutes a significant number of jobs in the "national economy." 42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).

## Analysis

I.     **Residual Functional Capacity**

    a)     <u>Chronology of Relevant Medical Evidence</u>

The instant medical record is relatively sparse. A significant portion of the record reflects treatment notes associated with Cooks' July 18-21, 2009, hospitalization for an acute inferior ST-segment-elevation myocardial infarction that required placement of a stent in her right coronary artery. *See e.g.*, Tr. 189-211. Another portion of the record documents Cooks' visits with her internist Samer Roy, M.D., which, but for one session, predate the relevant period, and are essentially unremarkable. (Tr. 213-242). Thus, the ALJ necessarily focused his review of the medical record on the opinions rendered by the consultative physician, Jaya Sharma, M.D., the non-examining agency physician, Johnny Craig, M.D.; and Cooks' treating cardiologist, Mark Napoli, M.D.

On December 17, 2009, at the request of the state agency, Cooks underwent a consultative physical examination administered by Jaya Sharma, M.D. (Tr. 255-258). Cooks reported difficulty working secondary to heart problems, diabetes, and knee pain. *Id*. She described chest pain and shortness of breath on exertion. *Id*. She reported that she could walk about 10-15 feet before becoming dyspneic and fatigued. *Id*. She described right knee pain, with persistent pain and swelling, exacerbated by standing and walking, and relieved with rest and elevation. *Id*. She denied any recent change in visual acuity. *Id*.

Upon examination, Cooks was able to bend, but unable to squat without difficulty. *Id*. She had 5/5 strength with adequate fine motor movements, dexterity, and ability to grasp objects bilaterally. *Id*. She had 20/25 vision in both eyes without correction. *Id*. She exhibited good tone, and 5/5 strength bilaterally in all muscle groups. *Id*. Dr. Sharma diagnosed hypertension,

diabetes, heart disease, and right knee pain. *Id*. She opined that Cooks should be able to sit, walk and/or stand for a full workday, but not necessarily lift/carry objects without limitation because of her inability to squat effectively without difficulty or assistance, plus the decreased range of motion in her right knee. *Id*.

In the wake of Dr. Sharma's report, non-examining agency physician, Johnny Craig, M.D. completed a Physical Residual Functional Capacity Assessment form on January 13, 2010. (Tr. 262-269). He indicated that Cooks could frequently lift 10 pounds and occasionally 20 pounds. *Id*. She could stand and/or walk for 4 hours in an 8 hour workday and sit for a total of 6 hours in an 8 hour workday. *Id*. Her ability to push and pull remained unlimited, save for her lifting restrictions. *Id*. She could occasionally perform all postural activities. *Id*. Craig credited no other limitations of functioning. *Id*.

On September 15, 2010, Dr. Napoli completed an attorney-supplied Medical Statement Regarding Coronary Artery Disease for Social Security Disability. (Tr. 280). He indicated on the form that Cooks suffers from anginal pain, history of revascularization and history of myocardial infarction. *Id*. As a result of these impairments, he opined that she could stand for 30 minutes at a time, sit for 4 hours at a time (which was the maximum option available on the form), occasionally lift 20 pounds, frequently lift 10 pounds, but with the need to occasionally elevate her legs during an 8 hour workday. *Id*.

Napoli also completed another form and assigned an "NYHA" classification of II, which denotes a patient with slight, mild limitation of activity who remains comfortable with rest or mild exertion. (Tr. 281).

b)      <u>Discussion</u>

In his decision, the ALJ reviewed the available evidence, including the hearing testimony,

objective testing, Plaintiff's activities of daily living, the findings of Plaintiff's treating cardiologist, the opinion of the consultative physician, and the assessment of the non-examining agency physician. (Tr. 16-17). In deriving Plaintiff's RFC, the ALJ assigned "great weight" to the opinions of Dr. Napoli and the non-examining agency physician because he deemed them consistent with the evidence of record. *Id*. However, he assigned "little weight" to Dr. Sharma's opinion that Cooks could sit, walk, and/or stand for a full workday because it was inconsistent with Cooks' history of myocardial infarction and decreased range of motion in her right knee. *Id*.

Plaintiff contends that the ALJ erred because despite affording "great weight" to Dr. Napoli's findings, the ALJ omitted, without explanation, Napoli's additional limitation regarding Cooks' need to occasionally elevate her legs during an 8 hour workday. The court agrees.

Ordinarily, a treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." 20 C.F.R. § 404.1527(d)(2).[2] "'[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir.1995) (citation omitted). However, an ALJ cannot reject a medical opinion without an explanation supported by good cause. *See Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir.2000) (citations omitted).

Here, the ALJ gave no reason for effectively rejecting Dr. Napoli's additional limitation. Moreover, the court cannot find that the error was harmless. Dr. Napoli did not explain what he meant by "occasionally." If he intended "occasionally" to coincide with the Commissioner's

---

[2] In addition, the opinions of specialists are generally accorded greater weight than those of non-specialists. *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990).

definition of the term, i.e., up to two hours in an eight hour workday,[3] then this additional restriction would materially undermine the ALJ's RFC, as it could not be accommodated during the usual workday breaks.

In her brief, the Commissioner theorizes that because Dr. Napoli characterized Cooks' cardiac impairment as causing a mild limitation of activity, he necessarily also intended that her need to elevate her legs was a limitation that did not materially affect her ability to work. (Gov't. Brief, pgs. 6-7). In other words, the Commissioner posits that Cooks' leg elevation requirement could be fulfilled while she sat at work or during normal breaks. As Plaintiff aptly noted in her reply, however, it is not known whether the jobs identified by the vocational expert would permit Cooks to elevate her legs while she was seated. Furthermore, although Dr. Napoli characterized Cooks' coronary artery disease as causing "mild" limitations, he nonetheless endorsed significant limitations of functioning, including the ability to only stand for 30 minutes at a time and to lift no more than 20 pounds occasionally. (Tr. 280-281). Therefore, whether intended or not, it is quite possible that his elevation restriction also materially impaired Plaintiff's ability to work.

The court notes that although Plaintiff did not convey the need to elevate her legs at the hearing, she was not directly questioned concerning this limitation. In any event, Cooks testified that she had to lie down once or twice per day for 30 minutes at a time. (Tr. 49-50). Plaintiff's need for recumbent rest is not inconsistent with Napoli's elevation requirement.

The court further emphasizes that the assessment of the non-examining physician, Dr. Craig, cannot be employed to salvage the ALJ's RFC. It is manifest that "an ALJ may properly rely on a non-examining physician's assessment when . . . those findings are based upon a careful

---

[3] *See* TITLES II AND XVI: DETERMINING CAPABILITY TO DO OTHER WORK--THE MEDICAL-VOCATIONAL RULES OF APPENDIX 2, SSR 83-10

evaluation of the medical evidence and *do not contradict those of the examining physician.*" *Carrier v. Sullivan*, 944 F.2d 243, 246 (5th Cir.1991) (quoting, *Villa v. Sullivan,* 895 F.2d 1019,1024 (5th Cir. 1990)) (emphasis added).[4] Because Dr. Craig did not include a limitation regarding Cooks' need to occasionally elevate her legs, his assessment materially controverts Dr. Napoli's opinion, and cannot provide a basis for the ALJ's determination. In addition, Dr. Craig's assessment was premised in no small part upon Dr. Sharma's examination report, which the ALJ determined was entitled to but little weight because of its internal inconsistency.

## Conclusion

In sum, because the foundation for the Commissioner's step five determination was premised upon a residual functional capacity that is not supported by substantial evidence, the court further finds that the Commissioner's ultimate conclusion that Plaintiff is not disabled, also is not supported by substantial evidence.[5]

For the above-stated reasons,

IT IS RECOMMENDED that the Commissioner's decision be REVERSED and REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have

---

[4] Also, a non-examining physician's opinion does not provide good cause for an ALJ to discount the findings of an examining physician. *See Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988) (addressing ALJ's reliance upon non-examining physician's opinion to discount findings of treating physician). The Fifth Circuit cited *Lamb* for the proposition that the reports of non-examining physicians do not provide substantial evidence when the non-examining physician's medical conclusions "contradict or are unsupported by findings made by an examining physician." *Villa, supra* (citing, *Lamb, supra*; and *Strickland v. Harris*, 615 F.2d 1103, 1109-10 (5th Cir. 1980)).

[5] The court need not consider Plaintiff's additional arguments. These issues may be addressed upon remand.

**fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers at Monroe, Louisiana, this 16th day of December 2013.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE